IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENNING-CAREY PROPRIETARY TRADING, LLC, CHARLES CAREY, JOSEPH NICIFORO ROBERT TIERNEY, JAMES GROTH, BRIAN FISHER, SHANE MCMAHON, MICHAEL METTE and TIMOTHY ZAUG, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> JON CORZINE, BRADLEY ABELOW, HENRI STEENKAMP, MICHAEL STOCKMAN, LAURIE FERBER, EDITH O'BRIEN AND CHRISTINE SERWINSKI, <br><br> Defendants. | No. 11-cv-08717 |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Henning-Carey Proprietary Trading, LLC, an Illinois limited liability company, Charles Carey, Joseph Niciforo, James Groth, Robert Tierney, Brian Fisher, Shane McMahon, Michael Mette and Timothy Zaug, individually and on behalf of all others similarly situated, state as their Class Action Complaint against defendants Jon Corzine, Bradley Abelow, Henri Steenkamp, Michael Stockman and Laurie Ferber as follows:

### INTRODUCTION

1. Defendants are officers of MF Global Holdings, Ltd. and its subsidiary, MF Global, Inc. MF Global claimed to be the world's leading broker for commodities and listed derivatives. On October 31, 2011, MF Holdings, Inc. filed for bankruptcy protection under chapter 11 of the U.S. Bankruptcy Code. On the same day, a trustee was appointed under the

Securities Investor Protection Act of 1970 to liquidate MF Global, Inc. Plaintiffs were customers of MF Global, Inc. who maintained significant cash balances in their trading accounts at the firm. Shortly after MF Global Holdings, Ltd.'s bankruptcy filing, it was disclosed that MF Global Inc.'s customer funds had not been properly segregated and maintained in compliance with applicable federal requirements, among others, and that as much as $1.2 billion in customer money was missing and unaccounted for, including funds belonging to the Plaintiffs. The amount of missing customer funds has now been estimated to be $1.6 billion. Defendants were responsible for insuring that the Plaintiffs' property was properly segregated and accounted for, and not misused or applied for any improper purposes. Plaintiffs are informed and believe that all of the $1.6 billion in missing customer funds, or a substantial portion thereof, will not be recovered and returned to MF Global, Inc.'s customers. By this action, Plaintiffs, individually and on behalf of others similarly situated, seek to recover from Defendants the damages they sustained as a result of this loss of their property.

## PARTIES

2.      Plaintiffs Henning-Carey Proprietary Trading, LLC, Charles Carey, Joseph Niciforo, James Groth, Robert Tierney, Brian Fisher, Shane McMahon, Michael Mette and Timothy Zaug are commodity traders who each opened one or more commodity futures and derivatives trading accounts with MF Global, Inc. Each plaintiff had a cash balance, and in some instances open positions, in their accounts on October 31, 2011.

3.      Defendants Jon Corzine, Bradley Abelow, Henri Steenkamp, Michael Stockman, Laurie Ferber, Edith O'Brien and Christine Serwinski were officers of MF Global Holdings, Ltd. ("MF Holdings") and/or MF Global, Inc. ("MFGI"). Defendants each shared responsibility for

insuring MFGI's compliance with all applicable federal laws and regulations concerning the segregation and maintenance of MFGI's customer funds.

## JURISDICTION AND VENUE

4. This action is brought pursuant to section 25(a)(1) of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 25(a)(1). This court has exclusive jurisdiction of this action pursuant to section 25(c) of the CEA, 7 U.S.C. § 25(c).

5. Venue in this district is proper pursuant to 7 U.S.C. § 25(c). This action is brought pursuant to Section 25(a) of the CEA, and this is a judicial district wherein certain of the acts and practices constituting violations of Commodity Exchange Act occurred. Further, Plaintiffs' "customer agreements" with MFGI provide for exclusive venue in Illinois, and provide that Illinois law shall govern the rights and liabilities of the parties.

## BACKGROUND FACTS

6. MFGI is a futures commission merchant ("FCM") registered with the Commodity Futures Trading Commission ("CFTC") and is subject to the requirements of the CEA and the rules and regulations promulgated thereunder.

7. Section 4d(a) of the CEA provides in relevant part:

> **It shall be unlawful for any person to engage as futures commission merchant** or introducing broker in soliciting orders or accepting orders for the purchase or sale of any commodity for future delivery, or involving any contracts of sale of any commodity for future delivery, **on or subject to the rules of any contract market or derivatives transaction execution facility unless–**
>
> * * * * *
>
> **(2) such person shall, if a futures commission merchant,** whether a member or nonmember of a contract market or derivatives transaction execution facility, **treat and deal with all money, securities, and property received by such person to margin, guarantee, or secure the trades or contracts of any**

> **customer of such person, or accruing to such customer as the result of such trades or contracts, as belonging to such customer. Such money, securities, and property shall be separately accounted for and shall not be commingled with the funds of such commission merchant or be used to margin or guarantee the trades or contracts, or to secure or extend the credit, of any customer or person other than the one for whom the same are held.**

7 U.S.C § 6d(a)(emphasis added).

8.	Consistent with the CEA's requirement to segregate and separately account for customer property, MFGI represented on its website that:

> MF Global is dedicated to preserving the safety and security of your assets.
>
> Through our internal safeguard policies and a strict adherence to the law, our goal is to protect your interests in every aspect of our relationship.
>
> **When You Trade Futures**
>
> To ensure the integrity of your funds, MF Global follows stringent rules to separate you futures transaction assets from those used to fulfill MF Global's own obligations and liabilities. We hold client assets in a separate account that is legally and physically distinct from our own accounts. This client asset account is subject to rigorous accounting processes as well as regulatory reporting and auditing.

www.mfglobal.com

9.	It is estimated that on or about October 31, 2011, MFGI had approximately 38,000 commodity customer accounts containing customer funds and assets with a value totaling approximately $5.45 billion. In accordance with the requirements of the CEA -- and MFGI's own practices and policies -- all of these customer funds and assets should have been segregated

and separately maintained in an account for the exclusive benefit of MFGI's commodities customers.

## MFGI'S COLLAPSE

10. In the weeks prior to October 31, 2011, it was widely reported that MF Holdings was engaging in highly leveraged and speculative trading in European sovereign debt. It is estimated that by mid-October, 2011, MF Holding's exposure to European sovereign debt exceeded $8.1 billion. Plaintiffs are informed and believe that the European sovereign debt investments were actually made by MFGI for MFGI's own account. As such, the investments were to be fully financed and supported by MFGI with its own assets and resources.

11. Due to rapidly deteriorating financial circumstances in the countries which had issued the European sovereign debt, and MF Holding's own deteriorating financial circumstances including credit downgrades by the three major ratings agencies, MFGI's counterparties to its European debt transactions began to demand additional margin and deeper discounts on the value of the collateral posted to secure the transactions. Further, in late October, 2011, MF Holdings, a publicly traded company listed on the New York Stock Exchange, reported significant quarterly losses. This reporting put further financial stress on the firm and caused even greater concern about its financial viability making it even more difficult for the firm to borrow additional funds to support its deteriorating sovereign debt position.

12. In a desperate effort to salvage its business, in the days leading up to October 31, 2011, MF Holdings attempted to sell its assets, including MFGI, to a third-party; however, that effort failed when, during the early morning of October 31, 2011, it was disclosed that MFGI could not account for all of the customer funds that should have been segregated and separately

5

maintained for the benefit of its commodities customers. This shortfall in customer segregated funds apparently began on October 26, 2011 and continued to grow in size until MFGI's liquidation on October 31, 2011. The actual shortfall was not reported to any regulatory authorities until 1:00 a.m. on October 31, 2011, and was originally explained away as an "accounting error." The failure by the Defendants to immediately identify, disclose and address the shortfall contributed to the massive size of the loss Plaintiffs have sustained.

13. On October 31, 2011, as a result of MFGI's apparent segregation violations, MFGI's clearing privileges at the major commodities and derivative clearing organizations, including the Chicago Mercantile Exchange ("CME") were suspended, and MFGI was put on a "liquidation only" status. The CME was MFGI's designated self-regulatory organization ("DSRO"), and at that time held about $2.5 billion in MFGI customer segregated funds.

14. Also as a result of MFGI's apparent segregation violations and the suspension of its clearing privileges, approximately 38,000 active commodity customer accounts, including Plaintiffs' accounts, were frozen on October 31, 2011, making it impossible for Plaintiffs and all of MFGI's commodity customers to access their accounts, including their own funds and other assets maintained in those accounts.

### MFGI'S SIPA LIQUIDATION AND MF HOLDING'S BANKRUPTCY FILING

15. Although MFGI was primarily a commodity and derivatives broker, it was also a registered securities broker-dealer, and maintained approximately 330 active securities accounts for securities customers.

16. On October 31, 2011, the Securities Investor Protection Corporation ("SIPC")

filed an action for the entry of a protective order placing MFGI in liquidation under the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. § 78aaa *et seq*. SIPC's request to place MFGI in liquidation was based on information provided to the United States Securities and Exchange Commission ("SEC"), indicating that MFGI was unable to make the computations necessary to establish compliance with the financial responsibility requirements under section 15(c)(3), and the record keeping requirements under section 17(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78o(c)(3) and 78q(a).

17.     Subsequently on October 31, 2011, an Order was entered commencing the liquidation of MFGI pursuant to the provisions of SIPA (the "MFGI Liquidation Order"), and an independent trustee (the "SIPA Trustee") was appointed to liquidate MFGI's business pursuant to § 78eee(b)(3) of SIPA.

18.     Also on October 31, 2011, MF Holdings filed a voluntary petition under chapter 11 of the U.S. Bankruptcy Code.

19.     Following MF Holdings bankruptcy filing and the entry of the MFGI Liquidation Order, at approximately 7:18 p.m. (EST) on October 31, 2011, Defendant Laurie Ferber, General Counsel for MFGI, sent an e-mail to the SEC, the CFTC, and the CME stating:

> This is to inform you that MF Global, Inc. has discovered a significant shortfall in its segregated funds account. The company is continuing to review the circumstances of the shortfall.

A copy of Defendant Ferber's October 31, 2011 e-mail is attached hereto as Exhibit A.

### EFFORTS TO RECOVER AND RETURN MFGI CUSTOMER FUNDS

20.     Under SIPA section 78fff-1(b), 15 U.S.C., § 78fff-1(b), when, as here, a FCM is

liquidated, the SIPA trustee has all of the duties imposed under the commodity broker liquidation provisions of chapter 7 of the Bankruptcy Code. Under section 766(h) of the Bankruptcy Code, 11 U.S.C. § 766(h), a trustee in a commodity broker liquidation is required to distribute customer property held by the debtor ratably to its commodity customers on the basis and to the extent of each customer's net equity in their accounts.

21.     Pursuant to CFTC rules, and consistent with SIPA, a trustee liquidating a commodity broker also has a duty to make immediate and best efforts to effect the transfer of open customer positions. 17 C.F.R. § 190.02(e)(1); 17 C.F.R. § 190.6(e) and (f).

22.     A substantial majority of MFGI's commodity customers cleared their transactions through the CME. Almost immediately upon entry of the MFGI Liquidation Order, the SIPA Trustee and the CME began the daunting task of attempting to identify and transfer to other FCMs approximately 14,500 MFGI customer accounts with open commodity positions. At that time there were more than 3 million open positions in these accounts with a notional value of $100 billion.

23.     On or about November 7, 2011, the SIPA Trustee, in conjunction with the CME, was able to transfer approximately 14,500 MFGI customer accounts with open positions, plus approximately $1.5 billion in customer funds, to new FCMs.

24.     The SIPA Trustee, working in conjunction with the CME, was also able to identify an additional 23,300 customer accounts which, as of October 31, 2011, were holding cash only in their accounts. On or about November 18, 2011, the SIPA Trustee distributed approximately $520 million to the "cash only" account holders.

25.     The SIPA Trustee currently proposes to distribute, by mid-December 2011, an

additional $2.1 billion in customer funds to MFGI's commodity customers. This proposed distribution includes a substantial portion of the U.S. based customer property currently under the Trustee's control. With this third distribution, the Trustee expects to "true up" the distributions made to date, so that each of MFGI's commodity customers will have received approximately two-thirds or more of the net equity in their MFGI accounts as of October 31, 2011.

26.     Despite the distributions made and proposed to be made by the SIPA Trustee to date, the Trustee has recently acknowledged that there will be a shortfall in the funds and other property available for distribution to MFGI's commodity customers. As a result MFGI's customers will not receive 100% of their property. Although the amount of the shortfall has not been determined, the Trustee has stated that it could be as much as $1.2 billion or more.

27.     Further, although it has been more than a month since the MFGI Liquidation Order was entered, neither the SIPA Trustee, the CFTC, the SEC, nor the CME have been able to determine what happened to the missing funds. The Trustee has indicated that MFGI's books and records were in disarray when the MFGI Liquidation Order was entered.

## CLASS ACTION ALLEGATIONS

28.     Plaintiffs bring this action on behalf of themselves and as the representative of the following class:

> All persons who, on October 31, 2011, were commodity futures customers of MFGI, and who had their own cash or other property on deposit with MFGI to be used to trade commodities or derivatives on U.S. contract markets.

29.     Each of the putative class members have been affected by the defendants' misconduct in identical ways. Under the commodity broker liquidation provisions of the

9

Bankruptcy Code, and CFTC rules promulgated thereunder, each class member will receive from the SIPA Trustee only an pro rata share of the customer funds held by MFGI based upon the net equity in their account on October 31, 2011. The funds distributed by the Trustee will not provide any class member with a 100% recovery of their property and, as a consequence, each class member will share pro rata in the shortfall in customer funds. As described further below, this shortfall was caused by Defendants' failure to ensure compliance with the segregation and customer fund maintenance requirements of the CEA and CFTC regulations, and MFGI's own internal policies and procedures, and their misconduct affected each class member in the same way.

30.     There are as many as 38,000 members of the class. The class is so numerous and the members of the class are so dispersed geographically that their joinder in this action is impracticable.

31.     There are questions of fact and law common to the class which predominate over any questions affecting individual class members. These predominating questions include, but are not limited to:

(a)     whether MFGI violated the CEA and implementing CFTC regulations by failing to segregate and separately maintain MFGI's commodity customers' property;

(b)     whether the defendants aided and abetted MFGI's violations of the CEA and implementing CFTC regulations by failing to adopt and enforce proper policies and procedures to ensure the segregation and separate maintenance of MFGI's customer property;

(c)     whether MFGI violated the CEA and implementing CFTC regulations by allowing MF Holdings and/or MFGI to use MFGI's customer property for improper or illegal purposes;

(d) whether the defendants willfully aided and abetted MFGI's violation of the CEA and implementing CFTC regulations by allowing MF Holdings and/or MFIG to use MFGI's customer property for improper or illegal purposes;

(e) whether MFGI had a fiduciary duty to ensure the safety and security of its customers' property;

(f) whether MFGI breached its fiduciary duty by failing to ensure the safety and security of its customers' property;

(g) whether the defendants aided and abetted MFGI's breach of its fiduciary duty by failing to enforce MFGI's internal policies and procedures designed to ensure the safety and security of its customers' property, and/or allowing MH Holdings and/or MFGI to improperly or illegally use MFGI's customer funds.

32. The claims made by Plaintiffs herein are typical of the claims of the class in that the provisions of the CEA and CFTC regulations which are alleged to have been violated apply equally and in the same respect to each class member, and Defendants are alleged to have violated those provisions in the identical way. Similarly, the claims arising out of MFGI's violations of its own internal policies and procedures, designed to ensure the safety and security of customer property, apply with equal force and in the same way to each class member, and Defendants failure to enforce those policies and procedures, and their conduct which aided and abetted a violation of the those policies and procedures, was identical in all circumstances.

33. Plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Plaintiffs have no conflicts which would impair their ability to represent the class, and they have retained counsel competent and experienced in class actions to prosecute

their claims.

34. Maintenance of a class action is an appropriate method for the fair and efficient adjudication of all claims arising out of MFGI's admitted failure to properly segregate its customers' property and funds.

## COUNT I
## AIDING AND ABETTING MFGI'S VIOLATION OF CEA

35. Plaintiffs incorporate and reallege paragraphs 1 through 34 above as paragraph 35 of this Count I.

36. Section 25(a)(1) of the CEA provides in relevant part:

(1) Any person (other than a registered entity or registered futures association) who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person –

\* \* \* \* \*

(B) who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity); or who deposited with or paid to such person money, securities, or property (or incurred debt in lieu thereof) in connection with any order to make such contract;

7 U.S.C. § 25(a)(1).

37. Each of the plaintiffs and putative class members opened commodity futures trading accounts with MFGI and deposited with MFGI money, securities or other property in connection with the placement of orders for commodity futures contracts.

38. MFGI violated segregation and customer funds maintenance requirements of section 6d of the CEA and the CFTC regulations promulgated thereunder by, among other things:

(a) failing to treat and deal with all money, securities, and property received by it to

margin, guarantee, or secure the trades or contracts of its customers, or accruing to its customers as the result of such trades or contracts, as belonging to such customer; and

(b)     failing to segregate and separately account for and not commingle its customer funds with the funds of MFGI, MF Holdings or their securities customers, or to use such funds and property to margin or guarantee the trades or contracts, or to secure or extend the credit, of MFGI, MF Holdings or any other customer or person other than the customer for whom the property was held.

39.     Each of the Defendants willfully aided and abetted MFGI's violations of the CEA and CFTC regulations by knowingly and intentionally:

(a)     failing to implement and enforce policies and procedures which would insure that MFGI's customer property, deposited for commodity futures trading, would be treated as belonging exclusively to such customers;

(b)     failing to implement and enforce policies and procedures which would insure that MFGI segregated and separately accounted for MFGI's commodity customers' property;

(c)     failing to implement and enforce policies and procedures which would insure that MFGI did not commingle its commodity customers' funds with the funds of MFGI, MF Holdings, and/or MFGI's securities customers;

(d)     failing to implement and enforce policies and procedures which would insure that MFGI did not use its commodity customers' funds to margin or guarantee the trades or contracts, or to secure or extend the credit, of MFGI, MF Holdings, and/or any other customer or person other than the customer for whom the property was held; and

(e)     allowing MFGI and MF Holdings to use MFGI commodity and derivative

13

customer funds to margin or guarantee the trades or contracts, or to secure or extend the credit, of MFGI, MF Holdings, or other customers or persons other than the customers for whom the property was held.

40.     As a direct and proximate consequence of Defendants' knowing and willful acts described above, Plaintiffs and the members of the putative class have lost a substantial portion of the property they deposited with MFGI to trade commodity futures contracts, have been denied the use of their property, and have been damaged thereby.

WHEREFORE, plaintiffs pray that judgment be entered in their favor, individually and on behalf of the class, for compensatory damages in an amount shown by the proofs to have been lost as a result of Defendants' conduct, and for their costs of suit.

## COUNT II
## AIDING AND ABETTING MFGI'S BREACH OF FIDUCIARY DUTY

41.     Plaintiffs incorporate and reallege paragraphs 1 through 34 above as paragraph 41 of this Count II.

42.     MFGI exercised complete dominion and control over its commodity customers' money, securities, or other property which had been deposited with and entrusted to MFGI to allow such customers to trade commodity futures contracts through MFGI.

43.     MFGI promised its customers that it would preserve the safety and security of their property by adopting internal safeguard policies designed to ensure the preservation of such property. MFGI also promised that, in order to ensure the integrity of its customers' funds, it would follow stringent rules to separate its customers' assets from those used to fulfill MFGI's own obligations and liabilities, and would hold its commodity customers assets in a separate

account that would be legally and physically distinct from MFGI's own accounts, and subject to rigorous accounting processes as well as regulatory reporting and auditing.

44. As such, MFGI owed its commodity customers, including Plaintiffs and the members of the class, a fiduciary duty to preserve and protect their assets, to act solely in their customer's best interests in connection with its custody and control of their assets, and to avoid any self-dealing.

45. MFGI breached its fiduciary duty to Plaintiffs and the members of the class by, among other things:

(a) failing to preserve the safety and security of their assets;

(b) failing to adopt and adhere to internal safeguard policies designed to preserve their property;

(c) failing to separate their assets from those used to fulfill MFGI's own obligations and liabilities;

(d) failing to maintain their assets in a separate account that was legally and physically distinct from MFGI's own accounts;

(e) failing to subject its segregated customer funds account to rigorous accounting processes which would insure the integrity of the funds in such account; and

(f) allowing Plaintiffs' and the class members' property to be used for improper and illegal purposes.

46. Defendants, who were responsible for ensuring MFGI's compliance with its own internal policies and procedures and the performance of its fiduciary duties to its customers, aided and abetted MFGI's breach of its fiduciary duties to Plaintiffs and the members of the class

by, among other things:

(a) failing to properly supervise MFGI to ensure that it was preserving the safety and security of its customers' assets;

(b) failing to require MFGI to adopt and/or adhere to internal safeguard policies designed to preserve its customers' property;

(c) failing to require MFGI to separate its customers' assets from those used to fulfill MFIG's and MF Holdings obligations and liabilities;

(d) failing require MFGI to maintain its customers assets in a separate account that was legally and physically distinct from MFGI's own accounts;

(e) failing to subject MFGI's segregated customer funds account to rigorous accounting processes which would insure the integrity of the funds in such account; and

(f) authorizing and allowing MFGI's customer funds to be used for improper or illegal purposes.

47. As the direct and proximate consequence of Defendants' conduct described above, Plaintiffs and the members of the putative class have lost a substantial portion of the money, securities, or other property they deposited with MFGI to trade commodity futures contracts, have been denied the use of their property, and have been damaged thereby.

WHEREFORE, plaintiffs pray that judgment be entered in their favor, individually and on behalf of the class, for compensatory damages in an amount shown by the proofs to have been lost as a result of defendants' conduct, for punitive damages in an amount equal to three times the compensatory damage award, and for their costs of suit.

Plaintiffs demand trial by jury.

HENNING-CAREY PROPRIETARY TRADING, LLC, CHARLES CAREY, JOSEPH NICIFORO, JAMES GROTH, ROBERT TIERNEY, BRIAN FISHER, SHANE McMAHON, MICHAEL METTE and TIMOTHY ZAUG

By: \s\ Michael H. Moirano
One of Plaintiffs' Attorneys

Edward T. Joyce
Rowena T. Parma
LAW OFFICES OF EDWARD T. JOYCE AND ASSOCIATES, P.C.
135 South LaSalle Street
Suite 2200
Chicago, Illinois 60603
(312) 641-2600

Peter B. Carey
Katherine T. Hartmann
CAREY & HARTMANN, LLC
135 South LaSalle Street
Suite 2200
Chicago, Illinois 60603
(312) 541-0360

Michael H. Moirano
Claire E. Gorman
Brittany E. Kirk
NISEN & ELLIOTT, LLC
200 West Adams Street
Suite 2500
Chicago, Illinois 60606
(312) 346-7800